UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

WARREN RILEY                                    CIVIL ACTION

v.                                              NO. 19-13950

LATOYA CANTRELL, ET AL.                         SECTION "F"

ORDER AND REASONS

Before the Court is the defendants' motion for summary
judgment. For the reasons that follow, the motion is GRANTED in
part and DENIED in part.

**Background**

This litigation arises from a politician's unkept promise.
When she was Mayor-Elect, Latoya Cantrell reneged on her offer to
employ Warren Riley as Director of Homeland Security and Public
Safety in her incoming administration.  Mr. Riley accepted the
offer, signed an employment agreement, and passed a background
check.  And, knowing that Riley had resigned from his position
with the Federal Emergency Management Agency in Georgia, Cantrell
withdrew the offer just before he was scheduled to assume the
position, ostensibly capitulating to two constituents whom
allegedly expressed opposition to Mr. Riley serving as Director
"due to his actions as Superintendent of the New Orleans Police

Department in the aftermath of Hurricane Katrina" (reportedly due to the now-infamous Danziger Bridge tragedy). By this lawsuit, Mr. Riley seeks to hold Mayor Cantrell and the City accountable for the damages he incurred when he relied on her reneged promise to employ him.

Warren Riley joined the New Orleans Police Department in 1981. He served in various "unclassified" and "at-will" positions there for over 29 years. He served as Deputy Chief and Assistant Chief, and, most notably, was promoted to Superintendent during the aftermath of Hurricane Katrina. After he retired in 2010, Riley became a contractor for the U.S. State Department. He was deployed to Haiti to assess the collapse of the criminal justice system following the 2010 earthquake. He then reported to Sydney, Australia and Prague, Czech Republic for disaster preparedness evaluations. In 2012, Mr. Riley was recruited by the Federal Emergency Management Agency and in 2013, he received top secret security clearance from the U.S. Department of Homeland Security. While with FEMA, he served as the lead federal official coordinating federal disaster response and recovery operations 15 times under the Obama and Trump Administrations. In 2017, Riley was living just outside of Atlanta, Georgia working at-will for FEMA.

During her campaign seeking to be elected Mayor of New Orleans, in April 2017, LaToya Cantrell called Mr. Riley and asked

that he share his thoughts on improving the NOPD, which Cantrell indicated would be a central issue in her mayoral campaign. He did so. Three months later in July 2017, Cantrell called Mr. Riley again and asked if he would accept the position of Homeland Security Director for New Orleans if she was elected Mayor. He said that he would consider such an offer if it was made. Eventually, it was.

On November 18, 2017, LaToya Cantrell was elected to serve as Mayor of the City of New Orleans. Almost six months later, on May 7, 2018, her inauguration was held.

Meanwhile, during the transition period between her election and swearing-in, Mayor-Elect Cantrell started assembling a team of individuals to serve in various positions in her administration.[1] On April 5, 2018, Mr. Riley applied to serve as Director of the New Orleans Department of Homeland Security and Public Safety; he was interviewed shortly thereafter, traveling at his own expense from Atlanta to New Orleans to interview. At the time he was being considered to serve as City Director of Homeland Security, Mr. Riley was living in Atlanta, Georgia and employed by the Federal

_____

[1] According to Mr. Riley, Cantrell sent employment offers by letter to each individual she sought to employ in her administration; and all of them remain working in her administration. Except Mr. Riley. His offer was unilaterally withdrawn before he began his service as Director. This litigation ensued because he had already accepted the offer and tendered his resignation for his then-present job with FEMA to become Director.

Emergency Management Agency.  During the interview with the Mayor-Elect, Mr. Riley informed Cantrell that his salary requirement was a minimum of $180,000 per year for a minimum of two years, with a pay raise to be awarded at the start of his third year if his job performance was satisfactory.  "I can do that," Cantrell said. She also advised that the position included the use of a City-owned vehicle and a fuel card.  Mayor-Elect Cantrell and Mr. Riley shook hands in agreement.

After a series of interviews, on April 22, 2018, Mayor-Elect Cantrell wrote to Mr. Riley, offering him the position for an annual salary of $180,000.  The letter states:

> I am pleased to offer you the unclassified position of Director of the Public Safety and Homeland Security for the City of New Orleans. This position is of "at-will" service to the City and without privilege of Civil Service standing.
>
> The salary for this position is herein offered at $180,000 annually.  This salary is paid bi-weekly and is subject to applicable federal and state withholdings. The City offers a mandatory pension plan, along with optional medical, dental and vision health care plan, life insurance, various voluntary deferred compensation plans, and other benefits.
>
> This offer is conditional upon the successful completion of a background check and drug screening.  Upon your confirmation and acceptance of this offer of employment, background screening will commence. If you accept this offer, please indicate below and complete the attached background check authorization....

The letter is signed by LaToya Cantrell, Mayor-Elect and then states: "To accept this job offer, please sing and date below. Return via email to [email address]."[2]

That same day, Mr. Riley accepted the offer of employment; he signed and dated the April 22, 2018 offer letter and completed the attached background check authorization form as instructed. Upon receiving confirmation that his signed acceptance had been received, on April 23, 2018, Mr. Riley tendered his resignation to FEMA, to be effective May 4, 2018. Mr. Riley would not have resigned from FEMA unless he had received and accepted the offer of employment from Cantrell; Cantrell knew that Mr. Riley would provide notice of his resignation to FEMA before he came to New Orleans to begin his job in her administration.

On April 24, 2018, Cantrell told Mr. Riley that she planned to publicly announce his appointment as the City's Director of Homeland Security and Public Safety "next week." Cantrell told Mr. Riley to be in New Orleans May 4, 2018 because his start date was May 7.

On April 30, 2018, Mr. Riley interviewed Col. Sneed, and he met with and interviewed Colin Arnold, Steven Gordon, the Director

---

[2] It is undisputed that the letter is silent concerning start date, end date, or duration of employment; that Mr. Riley did not receive any written specification concerning a term of employment; and Mr. Riley testified that he understood the position to be at-will and unclassified without civil service protections.

of the Orleans Parish Communications District.  On May 2, 2018, Mr. Riley attended a meet and greet in the City Council Chambers, where he was introduced as the incoming Director of the Public Safety and Homeland Security for the City of New Orleans.  At the end of the meet and greet, Mr. Riley held a meeting with New Orleans Police Superintendent, Michael Harrison; Fire Chief Mike McConnell; newly hired Crime Commissioner, Tynisha Stevens; and the acting director of New Orleans Homeland Security and Emergency Preparedness, Colin Arnold.

Moments later, Cantrell called Mr. Riley, instructing him to meet her in an office behind the City Council Chamber inside City Hall.  There, she advised Mr. Riley that his appointment had been "put on pause" and she instructed him not to attend the press conference that had been called for the purpose of announcing the members of the incoming administration's public safety leadership team, including Mr. Riley's position as Director of Public Safety and Homeland Security.  Cantrell told Riley, "I'll get back with you."

On May 6, 2018, Mayor-Elect Cantrell sent Mr. Riley a text message, advising that he was welcome to attend her inaugural ball on May 7, 2018.  In the same message, she said "We will put this to bed this week."

On May 14, 2018, Mr. Riley was contacted by a member of Mayor Cantrell's staff and instructed to report to the Mayor's office on

May 15, 2018.  Mr. Riley believed the purpose of the meeting was for him to take the oath of office as the Director of Public Safety and Homeland Security for the City of New Orleans.  During that meeting, however, Mayor Cantrell told Mr. Riley with irresolute timidity that "there are some very powerful people who live uptown that do not support you for the position."  After a brief conversation, Mayor Cantrell advised Mr. Riley that she would "take care of this situation on Friday [May 19, 2018]."[3]

On May 16, 2008, Mayor Cantrell called Mr. Riley, stated "Chief I can't do it. I'm sorry. I will not be able to appoint you. I will have to make you whole. I am sorry[;]" then, she hung up.  Almost immediately after she hung up the phone, a press release issued that lauded Mr. Riley's qualifications for the position, but nonetheless announced that he would not be appointed as the next Director of Homeland Security and Public Safety.[4]

---

[3] It is undisputed that, at some point after offering him the job, and him accepting, but before he started in the appointed position, Cantrell changed her mind about Riley serving as the City's Director of Homeland Security. On May 2, 2018, she informed Riley that she had to put his appointment on hold due to, as her attorneys put it, "public outcry," or because "various stakeholders expressed their opposition [to the appointment] due to his actions as Superintendent of [NOPD] in the aftermath of Hurricane Katrina." At some point between her inauguration on May 7 and May 16, 2018, Mayor Cantrell withdrew the offer of employment and informed Riley about her decision.  According to Mayor Cantrell, her decision not to appoint Riley was made when she considered his "overall credibility in the community."

[4] Mayor Cantrell considered Mr. Riley to be uniquely qualified for the position; she stated that his "qualifications are undeniable." Yet she rescinded his appointment.  She expected that Mr. Riley

This lawsuit followed. Invoking the Court's diversity jurisdiction, on November 27, 2019, Riley sued the Mayor and the City, alleging detrimental reliance, breach of contract, and unjust enrichment. Mr. Riley alleges that Cantrell is liable in her official capacity as Mayor, that the City is vicariously liable, and, in the alternative, that Cantrell is liable in her individual capacity for the alleged acts, omissions, and resulting damages including lost earnings, lost employment benefits, lost retirement/pension benefits, out of pocket travel expenses, embarrassment and humiliation, and legal fees and costs. Mr. Riley claims that he has been unable to secure replacement employment that is equivalent to what he would have earned in New Orleans or if he had not resigned from FEMA. Mr. Riley indicates that, at trial, he will prove that he has suffered a substantial economic loss as a direct result of Cantrell's failure to fulfill the employment agreement.

---

would be hired after he executed the employment letter. Colin Arnold, Jerry Sneed, and Stephen Gordon will testify that, based on their in-person meetings, they believed that Mr. Riley was the incoming Director of Homeland Security and Public Safety. For his part, Mr. Riley understood that Cantrell was excited about hiring him given his considerable emergency management experience. Mr. Riley held at-will positions for the last 37+ years and has never been fired by one of his employers. Mr. Riley "had no reason to believe that the mayor would not honor her word, that she would not follow through when she requested that [he] come back.... And I trusted the mayor, I believed in the mayor."

The Mayor and the City now seek summary relief dismissing Mr. Riley's claims.

I.

Summary judgment is proper if the record discloses no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit." Id. at 248.

If the non-movant will bear the burden of proof at trial, the movant "may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." In re La. Crawfish Producers, 852 F.3d 456, 462 (5th Cir. 2017)(citation omitted).

The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See Anderson, 477 U.S. at 248.  Nor do "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation[.]" Brown v. City of Houston, Tex., 337 F.3d 539, 541 (5th Cir. 2003); Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)("[T]he nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.").  The non-moving

9

party must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2). Ultimately, to avoid summary judgment, the non-movant "must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial." LeMaire v. La. Dep't of Transp. & Dev., 480 F.3d 383, 387 (5th Cir. 2007).

In deciding whether a fact issue exists, the Court views the facts and draws all reasonable inferences in the light most favorable to the non-movant. See Midwest Feeders, Inc. v. Bank of Franklin, 886 F.3d 507, 513 (5th Cir. 2018). And the Court "resolve[s] factual controversies in favor of the nonmoving party," but "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Antoine v. First Student, Inc., 713 F.3d 824, 830 (5th Cir. 2013) (citation omitted).

The Court must not evaluate the credibility of witnesses on a paper record, nor may it weigh evidence. When considering summary judgment motions prior to a bench trial, however, the Court in non-jury cases "has somewhat greater discretion to consider what

weight it will accord the evidence" and "to decide that the same evidence, presented to him . . . as a trier of fact in a plenary trial, could not possibly lead to a different result." Jones v. United States, 936 F.3d 318, 321-22 (5th Cir. 2019)(citations, internal quotations omitted).

## II.

The Mayor and the City seek summary relief dismissing as a matter of law Mr. Riley's breach of contract, detrimental reliance, and unjust enrichment claims as well as the vicarious liability theory of recovery and Mr. Riley's claim to recover attorney's fees.

### *A.*

Jurisdiction is based on diversity, so the Court applies the substantive law of the forum -- Louisiana. See Boyett v. Redland Ins. Co., 741 F.3d 604, 607 (5th Cir. 2014)(citing Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938)).[5]

---

[5] Despite that Mr. Riley alleges that he is a Georgia resident, no party suggests that this contact implicates an issue-specific choice-of-law analysis. Lonzo v. Lonzo, 17-549, p. 12 (La. App. 4 Cir. 11/15/17); 231 So. 3d 957, 966 ("A choice of law issue is presented whenever a suit presents 'a foreign element such as a nonresident party or an event outside the forum.'"). Likewise, no party briefs whether the Court must make an informed Erie guess as to how the Louisiana Supreme Court would resolve the detrimental reliance issue presented. More comprehensive briefing shall assist the Court before trial.

*Breach of Contract*

Mr. Riley alleges that the Mayor breached the parties' employment contract when she withdrew or rescinded his appointment as Director.[6]  Invoking Louisiana's at-will employment doctrine, the defendants seek summary relief dismissing the plaintiff's breach of contract claim.  Mr. Riley counters that Mayor Cantrell failed to comply with her duty to act in good faith in employment matters.  Given that there is no dispute that the parties' employment agreement was at-will, Mr. Riley's breach of contract theory of recovery (properly considered) fails as a matter of law.

"A contract is formed by the consent of the parties established through offer and acceptance."  La. Civ. Code art. 1927.  Under Louisiana law, a breach-of-contract claim has three elements: "'(1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation, and (3) the failure to perform resulted in damages to the obligee.'" IberiaBank v. Broussard, 907 F.3d 826, 835 (5th Cir. 2018) (quoting

---

[6] Mr. Riley did not allege a breach of contract claim *per se* in his complaint; however, he mentions this theory of recovery along with the parties' purported employment contract, ostensibly intertwining his breach of contract cause of action with the detrimental reliance cause of action. The defendants assume that Mr. Riley alleges a breach of contract theory of recovery.  Thus, the Court considers the defendants' argument that it fails as a matter of law.

<u>Favrot v. Favrot</u>, 1108-09, pp. 14-15 (La. App. 4 Cir. 2011); 68 So. 3d 1099, 1108-1109).

Under Louisiana law, there are two types of employment contracts: one for a fixed term and one terminable at the parties' will.[7] "A contract of unspecified duration may be terminated at the will of either party by giving notice, reasonable in time and form, to the other party." La. Civ. Code art. 2024. "A man is at liberty to dismiss a hired servant attached to his person or family, without assigning any reason for so doing. The servant is also free to depart without assigning any cause." La. Civ. Code art. 2747. In other words, when an employment arrangement is at-will, employers may terminate employees for any reason at any time as long as it is not an illegal reason, such as race discrimination. See <u>Quebedeaux v. Dow Chemical Co.</u>, 820 So. 3d 542, 545 (La. 2002). When one is employed at-will, generally there

---

[7] The state high court has observed:

> [E]mployment contracts are either limited term or terminable at will. Under a limited term contract[,] the parties agree to be bound for a certain period during which the employee is not free to depart without assigning cause nor is the employer at liberty to dismiss the employee without cause. When a contract does not provide for a limited term, an employer can dismiss the employee at any time and for any reason without incurring liability.

<u>Read v. Willwoods Cmty.</u>, 14-1475 (La. 3/14/15), 165 So. 3d 883, 887.

can be no breach of an employment contract. See Deus v. Allstate Ins. Co., 15 F.3d 506, 517 (5th Cir. 1994)(citation omitted)("Unless the employment contract is for a definite period of time, there is no enforceable action for damages[,] as the contract can be terminated at the will of either the employee or the employer."); Ivory v. M.L. Smith, Jr. L.L.C., No. 15-2022, 2015 WL 9074730, at *3 (W.D. La. Oct. 14, 2015)("Defendant could have terminated Plaintiff's employment after one day, or even less than one day, much less a week, and he still would not have had a claim under a breach of contract theory.").

Here, there is no dispute that Cantrell and Riley agreed that he would serve as Director of Homeland Security for an indefinite period and, therefore, the parties had an at-will employment arrangement. Mr. Riley identifies no contractual obligation which the Mayor breached. The Mayor could fire Mr. Riley for any reason and not breach the at-will employment contract. Putting aside federal and state statutory exceptions proscribing certain reasons for dismissing an at-will employee (none of which are implicated here), "there are no broad policy considerations creating exceptions to employment at will and affecting relations between employer and employee." Quebedeaux, 820 So. 2d at 545-46 (internal quotation, citation omitted).

Given the at-will employment arrangement specified in the contract, insofar as the plaintiff's theory is that the defendants

are liable for breach of contract based on wrongful discharge, this theory fails as they were "free to terminate [his employment] without incurring liability for the discharge" on a breach of contract theory. See id. In other words: the at-will employment doctrine precludes an employee's recovery of damages for wrongful discharge under a breach of contract theory. Mr. Riley identifies no contractual or other provision that limited the Mayor's power to treat him as an at-will employee. Indeed, any asserted limits on the employer's power to terminate an at-will employee are generally invalid. See Deus, 15 F.3d at 517; See also Filson v. Tulane Univ., No. 09-7451, 2010 WL 5477189, at *3 (E.D. La. Dec. 29, 2010)(Engelhardt, J.)(citation omitted) ("If the employment contract is an at-will agreement, an employee's termination need not be accurate, fair, or reasonable, and there does not have to be any reason at all for termination.").

That the Louisiana Civil Code imposes a duty to perform obligations in good faith does not alter the at-will feature of the parties' employment agreement. To be sure, "[c]ontracts must be performed in good faith." See La. Civ. Code art. 1983. "As a general rule, Louisiana recognizes an implied covenant of good faith and fair dealing in every contract." Whitney Bank v. SMI Companies Global, Incorporated, 949 F.3d 196, 210 (5 Cir. 2020)(citations omitted)(observing that "[t]he Civil Code defines good faith by reference to its 'breach': 'An obligor is in bad

faith if he intentionally and maliciously fails to perform his obligation.' La. Civ. Code art. 1997 cmt. b."). Absent a breach of contract, however, there is no independent claim for breach of the implied covenant of good faith. See id. (because Whitney did not breach the terms of either loan, any claim regarding its violation of the duty of good faith fails);[8] see also Schaumburg v. State Farm Mut. Auto. Ins., 421 Fed.Appx. 434, 439 (5th Cir. 2011)(unpublished)("[a] breach of the duty of good faith and fair dealing requires a breach of contract."). Pertinent here, as another Section of Court recently observed, "where an employment contract allows for at-will termination, and termination for no (or even impermissible) cause does not constitute breach, there is no claim for breach of the implied covenant of good faith." See Tedesco v. Pearson Education, Inc., No. 21-199 2021 WL 2291148, at *12 (E.D. La. June 4, 2021)(Africk, J.).

---

[8] There, the Fifth Circuit noted that, in Lamar Contractors, Inc. v. Kacco, Inc., 2015-1430 (La. 5/3/16), 189 So. 3d 394, 397, the Louisiana Supreme Court cleared up case literature confusion in holding that a plaintiff may not bring a cause of action for breach of good faith where the defendant was not actually in breach of the terms of the contract. See Whitney Bank, 949 F.3d at 211; cf. Apache Deepwater, L.L.C. v. W&T Offshore, Incorporated, 930 F.3d 647, 655 (5th Cir. 2019)(considering Lamar and Civil Code article 2003, which correlates to article 1983, and observing that "[t]he question of the obligee's bad faith does not become relevant until there is a determination that the oblige failed to perform a contractual obligation that in turn caused the obligor's failure to perform.").

To succeed on a breach of contract theory, Mr. Riley must show that there has been a breach of the terms of his employment agreement; only the breach of an express provision of a contract can form the basis of a breach of contract claim. Because Mr. Riley has not satisfied his burden of establishing, as a matter of law, that the defendants violated the employment agreement in reneging on the at-will employment arrangement or in "terminating" him before he began working as an at-will employee, summary judgment in the defendants' favor dismissing the breach of contract theory of recovery is warranted.[9]

*C.*

*Detrimental Reliance*

Though the at-will doctrine technically precludes any breach of contract claim (due to the absence of technical breach of an express obligation in the contract), Mr. Riley advances a cause of action that appears to fill the gap between the parties' contractual agreement and the Mayor's failure to honor her promise or obligation to bring him on as Director: detrimental reliance.

Mr. Riley alleges that, in reliance on his agreement with Mayor Cantrell that he would serve as the City's Director of Homeland Security in her administration, he resigned from his employment in Atlanta, Georgia with FEMA. He gave up a salary

---

[9] What if any impact the duty of good faith and fair dealing doctrine has on Mr. Riley's unjust enrichment theory of recovery (see *Bains*, *infra*) apparently must await pretrial briefing.

that paid him $170,000 annually, with bonus pay and benefits; he submits that he did so (and Mayor Cantrell knew he did so) in reliance on her promise that he would serve as Director, making $180,000 annually. Invoking the same employment at-will doctrine that precludes Mr. Riley's breach of contract theory of recovery, the defendants submit that it is unreasonable as a matter of law to rely upon an offer of at-will employment. On the papers submitted, the Court is not persuaded that Mr. Riley's reliance was unreasonable as a matter of law.

Article 1967 of the Louisiana Civil Code codifies the detrimental reliance cause of action:

Cause is the reason why a party obligates himself.

A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.

Sounding in estoppel, such claims are disfavored and examined strictly. See In re Ark-La-Tex Timber Co., Inc., 482 F.3d 319, 334 (5th Cir. 2007)(citations omitted).

"[D]esigned to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence[,]" the detrimental reliance doctrine "focuses on the reasonableness of a party's professed reliance

upon promises made outside the scope of a fully-integrated written agreement between the parties." <u>See</u> <u>Cenac v. Orkin, L.L.C.</u>, 941 F.3d 182, 197-198 (5th Cir. 2019)(quoting <u>Drs. Bethea, Moustoukas & Weaver LLC v. St. Paul Guardian Ins. Co. (Bethea)</u>, 376 F.3d 399, 403 (5th Cir. 2004)(internal quotation marks and citations omitted) and <u>Water Craft Mgmt., L.L.C. v. Mercury Marine</u>, 426 Fed.Appx. 232, 237 (5th Cir. 2011)(citation omitted)). In fact, this doctrine is typically invoked when there is no written contract, or an unenforceable contract exists between the parties. <u>See</u> <u>Bethea</u>, 376 F.3d at 403 (citation omitted).

Detrimental reliance doctrine is based on "the idea that a person should not harm another person by making promises that [s]he will not keep," <u>Suire v. Lafayette City-Parish Consol. Gov't</u>, 04-1459 (La. 4/12/05), 907 So. 2d 37, 58-59. To establish a detrimental reliance cause of action, the plaintiff must prove (1) a representation by word or conduct; (2) justifiable or reasonable reliance on the representation; and (3) a change in position to one's detriment resulting from the reliance. <u>See</u> <u>Cenac</u>, 941 F.3d at 198 (citation omitted).

Ordinarily, the reasonableness of a plaintiff's reliance on a promise is a fact-bound determination best reserved for the trier of fact; however, in certain circumstances, a plaintiff's reliance on a promise may be unreasonable as a matter of Louisiana law. <u>See</u> <u>Bethea</u>, 376 F.3d at 403-05. For example, "a party's reliance

19

on promises made outside of an unambiguous, fully-integrated agreement [that provides limited ways of altering the parties' relationship] is unreasonable as a matter of law." See Cenac, 941 F.3d at 198 (citing Bethea, 376 F.3d at 403-05). Similarly, the case literature finds reliance to be unreasonable as a matter of law "when a plaintiff relies on oral representations despite the law's insistence on certain formalities" or "when a plaintiff relies on a representation that is clearly not intended to bind the defendant or induce the plaintiff into reliance." See Bethea, 376 F.3d at 405. When a contract is presented, the Court "looks to both the presence of an integration clause and the plain language of the contract to determine whether, as a matter of law, reliance on inconsistent representations is unreasonable." Cenac, 941 F.3d at 198-99 (holding that the plaintiffs could not seek damages under detrimental reliance doctrine because one agreement clearly states that it was inapplicable to Formosan termites, another agreement disclaims any guarantee for damage related to services and releases Orkin for termite damage, and both agreements contain integration clauses permitting only written changes).

Mindful that the doctrine of detrimental reliance is designed to prevent injustice and is based on "the idea that a person should not harm another person by making promises that [s]he will not keep," Suire v. Lafayette City-Parish Consol. Gov't, 04-1459 (La. 4/12/05), 907 So. 2d 37, 58-59, the Court turns to consider the

issue presented by the defendants' motion.  That the plaintiff has no valid or enforceable contract does not preclude a detrimental reliance theory of recovery.  <u>See</u>, <u>e.g.</u>, <u>Audler v. CBC Innovis Inc.</u>, 519 F.3d 239, 254 (5th Cir. 2008)(citation omitted)("to prevail on a detrimental reliance claim, Louisiana law does not require proof of a formal, valid, and enforceable contract.").  "This is so," the state high court has observed, "because detrimental reliance is not based upon the intent to be bound[; r]ather, the basis of detrimental reliance is 'the idea that a person should not harm another person by making promises that [s]he will not keep."  <u>See</u> <u>Suire</u>, 907 So. 2d at 59.  Instead of considering whether the parties intended to perform, the Court properly directs its focus on "whether a representation was made in such a manner that the promisor should have expected the promisee to rely upon it, and whether the promisee so relies to his detriment."  <u>Id.</u>

On the precise issue presented -- whether a prospective at-will employee's reliance on an offer of at-will employment is unreasonable as a matter of law -- the state high court has not ruled, and Louisiana intermediate courts (which are not strictly binding here) appear to differ.  The defendants invoke <u>May v. Harris Mgmt. Corp.</u>, 2004-2657 (La. App. 1 Cir. 12/22/05), 928 So. 2d 140, whereas the plaintiff invokes <u>Bains v. Young Men's Christian Ass'n of Greater New Orleans</u>, 06-1423 (La. App. 4 Cir.

10/3/07), 969 So.2d 646, *writ denied*, 07-2146 (La. 1/7/08), 973 So. 2d 727, which criticized May. On the briefing presented, the Court declines to endorse May as binding dispositive authority. Although Bains does not definitively resolve the issue of whether a prospective at-will employee may recover on a detrimental reliance theory, it is at least as instructive.

The defendants invoke May v. Harris Mgmt. Corp., 2004-2657 (La. App. 1 Cir. 12/22/05), 928 So. 2d 140, which was decided in 2005 by the Louisiana First Circuit Court of Appeal. There, an employee sued a nursing home for detrimental reliance after she quit her then-current job when the nursing home defendant offered her an at-will position with it. Five days before her agreed-upon start date with defendant, the nursing home employer withdrew its offer, and the employee was unable to return to her prior employment position. Id. at 143-44. The Louisiana First Circuit Court of Appeal affirmed the trial court's grant of summary judgment in favor of the employer, dismissing the employee's detrimental reliance claim. Noting that the issue of reasonableness of May's reliance on HMC's promise was "not as clear," the May court leaned heavily on "the strong presence" of Louisiana's at-will employment doctrine, noted that -- in the sparse case literature where plaintiffs assert detrimental reliance when terminated *after* working a short time in an at-will employment context -- Louisiana appellate courts have held it to

be unreasonable to have relied on the at-will employment, considering that a contract for permanent employment is legally unenforceable. Id. at 146-47. Next, the May court observed a split of authority outside Louisiana when those authorities considered whether a plaintiff may pursue a detrimental reliance theory of recovery when an at-will employment offer is withdrawn before that employee actually begins work. Id. at 147-48. Though noting the "harshness" of its ruling, ultimately, the May court concluded that "the better view" is that "it is patently unreasonable for an employee to rely on an offer of at-will employment . . . just as it is patently unreasonable to rely on the permanency of at-will employment once it begins." Id. at 148-49. Finally, the court also determined that May could not prove the third (damages) element of the detrimental reliance claim because she had no lost wages before her start date (she was on accrued vacation from her previous employer), she did not have any relocation damages, and she was able to find replacement employment (for higher pay) one month after the defendant withdrew its offer of employment. Id. at 149.

Notably, May itself was a divided opinion.[10] One judge "concurred" insofar as May failed to prove damages, but clearly

_____

[10] Considering that they fail to acknowledge, let alone grapple with the split opinion, perhaps the defendants do not find this fact notable. It is at best curious and at most concerning that the defendants likewise fail to acknowledge and brief the split of

rejected the majority's application of the at-will doctrine to preclude recovery altogether, observing that:

> [T]he "at-will" doctrine does not apply to a party who is not yet an employee. A prospective employee should be able to collect damages for costs of moving and other provable damages a s a result of a breach of promise on which a normally reasonable person would rely.
>
> When we say that it is unreasonable as a matter of law for an employee to rely on a promise of employment, we say that it is reasonable for employers to expect employers to breach their promises and act in reckless disregard of the prospective employees' welfare. I believe the contrary: that employers generally act honorably and in good faith. I therefore believe that it is highly reasonable to rely on an employer's promise of employment. And pre-employment damages are not precluded by the "at-will" doctrine.

Id. at 150-51 (Downing, J., concurring in the result). Another judge dissented, wholly rejecting the May majority's conclusion, and noting that at least a fact issue existed as to whether May suffered detriment under the doctrine of detrimental reliance:

> In my view, such a conclusion [that the at-will employment doctrine applies to preclude recovery to a prospective employee] is an unwarranted extension of the at-will employment principle to a classic factual scenario of detrimental reliance governed by La. C.C. art. 1967.
> ...

---

authority on this issue which they suggest is settled law in their moving papers. But the law is not so settled, or cynical. For the first time in their reply paper, the defendants acknowledge (but distinguish) Bains; they appear to double down on their position that May is settled Louisiana law. Absent briefing directed to an Erie guess that persuasively would establish May as the likely conclusion to be reached by the Louisiana Supreme Court, the defendants' papers fail to satisfy their burden on summary judgment. The Court expects more comprehensive briefing in advance of trial.

> The undisputed evidence ... show[ed] May was never
> afforded the promised opportunity of beginning
> employment with HMC, and reasonably relied upon a firm
> promise of employment before leaving the security of
> ongoing employment and surrendering personal advantages.
> At the very least, genuine issue of material fact existed
> as to whether such changes constituted detriment under
> the doctrine of detrimental reliance.
> ...
> Would the result be different and anomalous if HMC had
> terminated Ms. May's employment the day after she
> started, with no consequent liability? It certainly
> might appear so, but the line must be drawn somewhere....
> Our law is not perfect, but courts should nevertheless
> strive to achieve justice within its imperfect
> parameters.

Id. at 149-151 (Gaidry, J., dissenting).

For his part, Mr. Riley invokes slightly more recent persuasive authority, an opinion by the Louisiana Fourth Circuit Court of Appeal, Bains v. Young Men's Christian Ass'n of Greater New Orleans, 06-1423 (La. App. 4 Cir. 10/3/07), 969 So.2d 646, writ denied, 07-2146 (La. 1/7/08), 973 So. 2d 727. There, Bains discussed a new employment opportunity with the YMCA and was offered the position of director of development, which included a starting salary that was $25,000 more per year than her current salary. Id. at 467-48. Three times, the CEO confirmed that the offer was legitimate, and the CEO emailed Bains, stating "I would like you to start on June 6." Id. As a result, Bains resigned from her then-current employment. Id. at 648. But when Bains was supposed to start working at the YMCA, she was told that the position was not available and may not be available until the fall.

Id. Bains remained unemployed for seven months, sued, and sought damages due to her reliance on YMCA's promise of employment. The trial court granted the defendant's exception of no cause of action. Id.

In reversing, the Louisiana Fourth Circuit Court of Appeal employed a "traditional civilian analysis" and criticized its sister appellate court for failing to do so in May v. Harris Mgmt. Corp., 2004-2657 (La. App. 1 Cir. 12/22/05), 928 So. 2d 140, the case invoked by the Mayor and City in this case. See Bains, 969 So. 2d at 650 (Detrimental reliance doctrine is based on the idea that "in a civil society, people should keep their word."). Bains rejected May's finding that Louisiana's at-will doctrine essentially shields the employer from a detrimental reliance cause of action in every factual scenario. Id. at 652. Ultimately, the Bains court's holding was limited to a rejection of May insofar as Bains determined that the employment at-will doctrine did not preclude the plaintiff from stating a cause of action. Id. at 652.[11]

Bains presented a procedurally distinct scenario, which the defendants submit precludes a finding that it directly conflicts with May. Regardless of whether a direct conflict is presented by

_____

[11] One judge concurred and two dissented; the dissenting opinion simply stated that May already determined that "it is inherently unreasonable to rely on an offer of at-will employment." Id. at 652 (Armstrong, C.J., joined by Bagneris, J., dissenting).

the two state appellate cases[12] -- absent briefing directed to any Erie guess the Court should undertake -- the Court embraces as reasonable the Bains court's decidedly civilian approach and accommodation of the at-will and detrimental reliance code doctrines in the pre-employment context. The parties will have another opportunity to brief the legal issue before trial.

Rejecting the defendants' wholesale reliance on May and that intermediate appellate court's categorical bar against detrimental reliance in the prospective at-will employment *offer* context, it follows that the defendants' motion for summary judgment must be denied. Viewing the record facts in the light most favorable to Mr. Riley, Mayor-Elect Cantrell promised and assured Mr. Riley that he would serve in her administration as Directory of Homeland Security and Public Safety. Mr. Riley was never afforded the opportunity promised by Mayor Cantrell: to serve, however briefly at-will, as the City's Director of Homeland Security. "[A] person should not harm another person by making promises that [s]he will

---

[12] But see Allbritton v. Lincoln Health Sys., Inc., 45,537 (La. App. 2 Cir. 10-20-10), 51 So. 3d 91, 97 (noting the conflict presented between May and Bains on the issue of whether the at-will doctrine applies to a person who has been offered employment but not yet hired); Ditcharo v. United Postal Service, Inc., 376 Fed.Appx. 432, 439-40 (5th Cir. 2010) (unpublished) (affirming district court's finding that parcel delivery service employees failed to state a determinantal reliance claim based on a promise of permanent employment because such reliance would be unreasonable as a matter of law in the at-will context, but also observing that the employees "do not allege that [the employer] failed to hire them[.]").

not keep." See Suire, 907 So. 2d at 59. A detrimental reliance theory focuses on "whether a representation was made in such a manner that the promisor should have expected the promisee to rely upon it, and whether the promisee so relies to his detriment." Id. Whether Mr. Riley *reasonably* relied on Mayor-Elect Cantrell's promise to employ him in the at-will, unclassified position as Director (for any length of time) is a classic fact issue which the parties genuinely dispute. The Mayor submits that no prospective employee could rely on a promise of at-will employment and that Mr. Riley in particular could not so rely, given his particular experience and knowledge having served for decades as an at-will, unclassified employee of the City. Mr. Riley counters that his reliance on Cantrell's promise that he would be employed as the City's Director of Homeland Security -- a promise which itself was neither so vague nor gratuitous that no one could reasonably rely on it -- was in fact reasonable, considering the parties' reciprocal promises, his particular knowledge that Mayor Cantrell selected him based on his unique and extensive experience in agreeing to appoint him, that Mayor Cantrell knew he would or had resigned from his job at FEMA so that he could serve in the promised capacity by the Mayor-Elect of New Orleans, as Director, and considering his particular experience of having served in at-will, unclassified capacities for decades without ever being

fired.  On this briefing, summary judgment dismissing Mr. Riley's detrimental reliance theory of recovery must be denied.

*D.*

*Unjust Enrichment*

Invoking Louisiana Civil Code article 2298, which provides "a person who has been enriched without cause at the expense of another person is bound to compensate that person[,]" the plaintiff alleges in his complaint that he provided valuable professional services to Mayor Cantrell and the City of New Orleans for which he was not compensated.  The defendants seek summary relief dismissing the unjust enrichment claim on the grounds that the plaintiff cannot prove an enrichment, an impoverishment, or the lack of an alternative remedy.

Here, the plaintiff fails to mention his unjust enrichment theory in his opposition papers.  Plaintiff's counsel confirmed at oral argument that he has abandoned the claim.  Perhaps this is so because he cannot prove the fifth element of such a claim: absence of another remedy at law.

The Louisiana Supreme Court articulates five elements for unjust enrichment claims:

(1) there must be an enrichment;
(2) there must be an impoverishment;
(3) there must be a connection between the enrichment and resulting impoverishment;
(4) there must be an absence of "justification" or "cause" for the enrichment and the impoverishment; and
(5) there must be no other remedy at law available to the plaintiff.

See <u>Baker v. Maclay Properties Co.</u>, 648 So. 2d 888, 897 (La. 1995). Insofar as the unjust enrichment remedy "is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule[,]" <u>see</u> La. Civ. Code art. 2298, it is unavailable here given that Mr. Riley pursues other remedies.  Here, the Court has determined that Mr. Riley may pursue a detrimental reliance theory of recovery; he thus has another remedy at law.

Even if the Court had determined that Mr. Riley had no cause of action for either detrimental reliance or breach of contract, Mr. Riley could not prove the fifth element of his unjust enrichment cause of action because "[t]he mere fact that a plaintiff does not successfully pursue another available remedy does not give the plaintiff the right to recover under the theory of unjust enrichment."  <u>See</u> <u>Bureau Veritas Commodities and Trade, Inc., v. Nanoo</u>, No. 20-3374, 2021 WL 2142466, at *7-8 (E.D. La. May 26, 2021)(Vance, J.)(citing <u>Walters v. MedSouth Rec. Mgmt., LLC</u>, 38 So. 3d 243, 244 (La. 2010)).  The defendants are entitled to summary judgment dismissing the unjust enrichment claim.

III.

Finally, the defendants submit that they are entitled to judgment as a matter of law that (i) the plaintiff cannot as a matter of law recover damages from the City under the doctrine of

vicarious liability because Louisiana courts have interpreted article 2320 of the Civil Code to mean that an employer is liable for the *torts* of an employee committed while the employee is acting within the course and scope of her employment, but that the doctrine is inapplicable to contractual or obligation-based causes of action not sounding in tort; and (ii) the plaintiff cannot recover attorney's fees because he has identified no statute or contract authorizing such an award. The plaintiff does not oppose the defendants' submission on these points of law, and plaintiff's counsel confirmed during oral argument that these claims should be dismissed.

***

Accordingly, for the foregoing reasons, IT IS ORDERED: that the defendants' motion for summary judgment is GRANTED in part (as to the plaintiff's breach of contract claim, unjust enrichment claim, the vicarious liability theory of recovery against the City, and the plaintiff's claim seeking attorney's fees) and DENIED in part (as to the plaintiff's detrimental reliance claim, which remains for trial).

New Orleans, Louisiana, June 30, 2021

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE