UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

WARREN RILEY                                          CIVIL ACTION

VERSUS                                                NO. 19-13950

LaTOYA CANTRELL, *et al.*                             SECTION M

### ORDER & REASONS

Before the Court is a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure filed by defendants the City of New Orleans and LaToya Cantrell, individually and in her capacity as Mayor of the City of New Orleans (collectively, "Defendants").[1] Plaintiff Warren Riley responds in opposition,[2] and Defendants reply in further support of their motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court denies the motion because Riley has demonstrated by a preponderance of the record evidence that the Court has diversity jurisdiction over this action based on his Georgia domicile at the time he filed this lawsuit.

I.   **BACKGROUND**

This litigation arises from a politician's unkept promise. When she was Mayor-elect, Cantrell reneged on her offer to employ Riley as Director of Homeland Security and Public Safety in her incoming administration. Riley accepted the at-will offer by signing a written employment agreement, subject only to a background check. Knowing that Riley had resigned from his position with the Federal Emergency Management Agency ("FEMA") in Georgia, Cantrell withdrew the

---

[1] R. Doc. 76.
[2] R. Doc. 78.
[3] R. Doc. 81.

1

offer just before he was scheduled to assume the director position, ostensibly capitulating to two constituents who allegedly expressed opposition to Riley serving as director "due to his actions as Superintendent of the New Orleans Police Department in the aftermath of Hurricane Katrina" (reportedly due to the now-infamous Danziger Bridge tragedy). By this lawsuit, Riley seeks to hold Mayor Cantrell and the City accountable for the damages he incurred when he relied on her (since-reneged) promise to employ him.

This Order & Reasons assumes familiarity with prior proceedings in this civil action.[4] In the wake of prior court rulings, only Riley's detrimental reliance claim remains. Because the Defendants now challenge this Court's subject-matter jurisdiction, the Court recounts here only the essential facts bearing on the key question of where Riley was domiciled when he filed his lawsuit against the City and the Mayor.

Before the Mayor offered (and Riley accepted) the position of Director of Homeland Security and Public Safety for the City of New Orleans, Riley worked for approximately six years for FEMA. He testified that he lived in Chicago, Illinois, until approximately mid-2017, when he moved to Atlanta, Georgia.[5] Riley filed state income tax returns with the state of Illinois for tax years 2016 and 2017 and with the state of Georgia for tax years 2017, 2018, and 2019. He testified that he has been living in Louisiana since March 2020.

Riley indicated that in 2017, while living in Atlanta and working for FEMA, he purchased a home in Slidell, Louisiana, as an investment property. He never rented the property but would stay there from time to time when he visited New Orleans to golf with friends. In the April to May 2018 timeframe, he applied for several jobs in Louisiana – at Delgado, Dillard, Xavier, and SUNO – as well as one in Georgia: for director of emergency management in Cobb County. Still, Riley

---

[4] *See, e.g.,* R. Doc. 54.
[5] On April 19, 2021, Defendants deposed Riley. *See* R. Docs. 76-2; 78-2 (excerpts of Riley's deposition).

2

also testified that in 2018, he "was happy with [his] job [at FEMA]" and "expected to be with FEMA at least another five to seven years."[6]  That changed when Riley received (and accepted) Mayor-elect Cantrell's written employment offer on April 22, 2018.  The next day, upon receiving confirmation that his signed acceptance had been received, Riley resigned from his position at FEMA, effective May 4, 2018.  In his April 23 resignation letter, he stated that he "will accept one of two job offers in the State of Louisiana.  Both opportunities will allow me to be closer to home."[7]  On May 16, 2018, the Mayor told Riley that she would not appoint him, effectively withdrawing the offer of employment which he had previously accepted.

Riley filed this lawsuit against the Mayor and the City on November 27, 2019, invoking the Court's diversity jurisdiction.[8]  He alleged in the complaint that he was a resident and domiciliary of Georgia at the relevant time, while the defendants are citizens and domiciliaries of Louisiana.  After years of litigation,[9] Defendants now say that the record supports a finding that Riley changed his Georgia domicile to Louisiana at some point before he filed this lawsuit, and so they move to dismiss his lawsuit "with prejudice"[10] for lack of subject-matter jurisdiction.

---

[6] R. Doc. 78-2 at 5.
[7] R. Doc. 76-4.  Having logged nearly 30 years with the NOPD, R. Doc. 70 at 12, it is hardly surprising that Riley might consider New Orleans "home" regardless of his geographic address or, importantly here, his domicile.  Sentiment is quite another thing from domicile.
[8] R. Doc. 1.
[9] To date, the litigation has resulted in summary judgment for Defendants dismissing all but Riley's detrimental reliance claim.  R. Doc. 54.  Riley was deposed in the run up to summary judgment.
[10] R. Doc. 76 at 1.  A dismissal for lack of jurisdiction does not amount to an adjudication on the merits and must be done "without prejudice" to a plaintiff's opportunity to file suit in a court having jurisdiction to render a judgment on the merits.  *See Ramming v. United States,* 281 F.3d 158, 161 (5th Cir.2001) ("The court's dismissal of a plaintiff's case because the plaintiff lacks subject matter jurisdiction is not a determination on the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction.").

## II. LAW & ANALYSIS

### A. The Standard for a Rule 12(b)(1) Challenge to Diversity Jurisdiction

The subject-matter jurisdiction of federal courts is limited. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Indeed, "[i]t is to be presumed that a cause lies outside this limited jurisdiction," the Supreme Court has observed, "and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (citations omitted); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938) ("The intent of Congress drastically to restrict federal jurisdiction in controversies between citizens of different states has always been rigorously enforced by the courts."); *Ramming*, 281 F.3d at 161.

Rule 12(b)(1) requires dismissal of an action if a court lacks jurisdiction over the subject matter of the plaintiff's claim. There are two types of Rule 12(b)(1) challenges: a facial attack and a factual attack on a complaint. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). If the defendants present a "facial attack" under Rule 12(b)(1), a court need only look to the sufficiency of the allegations in the complaint, presumed to be true. If the defendants advance a "factual attack" on the district court's subject-matter jurisdiction, both sides may submit evidence. Thus, a court may find a plausible set of facts to support subject-matter jurisdiction by considering any of the following: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996).

To carry his burden to prove that the district court has diversity jurisdiction, a plaintiff, the party invoking the court's jurisdiction, must show by a preponderance of the evidence that (1) there exists complete diversity of citizenship between the parties; and (2) the amount in

controversy exceeds $75,000, exclusive of interest and costs. *Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 638 (5th Cir. 2003) (citing 28 U.S.C. § 1332). A challenge to subject-matter jurisdiction may be raised by a party at any time. *Coury v. Prot*, 85 F.3d 244, 249 (5th Cir. 1996) (citing Fed. R. Civ. P. 12(h)(3)).

"[D]iversity of citizenship must exist at the time the action is commenced." *See Coury*, 85 F.3d at 248. And, "[i]f diversity is established at the commencement ... of the suit, it will not be destroyed by subsequent changes in the citizenship of the extant parties." *Id.*

To determine whether there is diversity jurisdiction (that is, that the claim is between citizens of different states), a district court must determine the domicile of the parties. *Id*. Domicile is established by "physical presence in a location coupled with an intent to remain there indefinitely." *In re Ran*, 607 F.3d 1017, 1022 (5th Cir. 2010) (citing *Texas v. Florida*, 306 U.S. 398 (1939)) Notably, while state law may be helpful guidance, "the question of a person's domicile is a matter of federal common law." *Acridge v. Evangelical Lutheran Good Samaritan Soc'y*, 334 F.3d 444, 448 (5th Cir. 2003). The Fifth Circuit has observed

> A person acquires a "domicile of origin" at birth, and this domicile is presumed to continue absent sufficient evidence of change. There is a presumption of continuing domicile that applies whenever a person relocates. In order to defeat the presumption and establish a new domicile (the "domicile of choice"), the person must demonstrate both (1) residence in a new state, and (2) an intention to remain in that state indefinitely. There is no durational residency requirement in the establishment of domicile; once presence in the new state and intent to remain are met, the new domicile is instantaneously established.

*Id.* (internal citations omitted).

A person's mere presence in a new location does not effect a change of domicile; instead, a person's domicile "persists until a new one is acquired or it is clearly abandoned" and "[t]here is a presumption in favor of the continuing domicile." *Coury*, 85 F.3d at 250; *see also Acridge*, 334 F.3d at 448. And, again, it is one's domicile at the time the complaint is filed that is critical for

5

determining whether diversity exists. *Coury*, 85 F.3d at 248-49 (citing *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989)).

To assess a person's intent to remain for the purposes of establishing domicile, courts examine a variety of factors. "No single factor is determinative," so courts "should look to all evidence shedding light on the litigant's intention to establish domicile." *Id*. at 251. The factors courts may examine include "the places where a litigant exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his family." *Id.*; *see also Acridge*, 334 F.3d at 448.

**B. Analysis**

Subject-matter jurisdiction here turns on whether Riley was domiciled in Georgia (as he alleges) or Louisiana on November 27, 2019, when this lawsuit was filed.[11] Considering Riley's entire course of conduct as evidenced by the record, the Court finds that a preponderance of the evidence – including the body of objective facts – indicates that Riley was domiciled in Georgia before this lawsuit was filed and that this did not change before November 27, 2019.

Seeking dismissal under Rule 12(b)(1), Defendants present a factual challenge to Riley's alleged Georgia citizenship, specifically submitting that Riley was domiciled in Louisiana at the time he filed his complaint. It is undisputed that Riley was living in Georgia at least by 2017, and that he continued to reside there at the time he accepted Cantrell's offer of at-will employment in April 2018. The question presented is whether Riley changed his domicile from Georgia to Louisiana before filing his complaint on November 27, 2019.

---

[11] It is undisputed that the amount-in-controversy requirement is satisfied.

Examining the *Coury* factors, a preponderance of the record evidence indicates that Riley had not yet changed his domicile from Georgia to Louisiana by November 27, 2019. Constructing a timeline from the record evidence is helpful to contextualize the task.

Riley testified that he retired from the NOPD on May 10, 2010, did some consulting from New Orleans from 2010 until 2012, then moved to Chicago in April 2012 to work for FEMA. While in Chicago, Riley's then-wife wanted to return to her hometown of Los Angeles, California. So, they purchased a house in Los Angeles, and he commuted back and forth to Chicago, where he worked in an office for FEMA and kept an apartment. For the first four years he worked for FEMA, he did so in Chicago; then he transferred to a FEMA office in Atlanta.

After Riley got divorced, he sold his interest in the California house. Not later than 2017, he moved from Illinois (and California) to Georgia. Riley testified that in 2017, while living in Georgia and working for FEMA, he "was trying to decide where to invest in buying a home," and in mid-2017 he bought a house in Slidell, Louisiana, "as an investment property" because "the market here was good at the time[.]"[12] Other than the weekend occasions he stayed at the Slidell property while visiting friends in New Orleans to play golf, the Slidell house remained "vacant" until he moved there in March 2020.[13] More than once, Riley testified unequivocally that he "didn't move into the [Slidell] home until March of 2020" and was not living in Louisiana before then.[14] He also testified that, when he was living in Georgia working for FEMA, he was "happy" with his job at FEMA and, before Cantrell's job offer, he "expected to be with FEMA at least another five to seven years."[15]

---

[12] R. Doc. 78-2 at 4.
[13] *Id*. at 3-4.
[14] R. Docs. 76-2 at 2; 78-2 at 2.
[15] R. Doc. 78-2 at 5.

Other objective facts *Coury* obliges the Court to consider support Riley's testimony. He paid utility bills in Georgia through 2019, submitting email payment confirmations, including one from November 23, 2019, for a Georgia power utility payment due December 4, 2019.[16] A photocopy of Riley's driver's license shows that it was issued by the state of Georgia on June 19, 2019 (to expire in 2027) and listed his address as 1160 Hammond Drive Unit 364, Sandy Springs, Georgia 30328.[17] His vehicle registration was also issued by the state of Georgia for the same Sandy Springs address: its issue date was March 8, 2019, with an expiration date of January 15, 2020.[18] Riley also offers up a receipt from a gun range in Georgia, which indicates that he purchased a firearm there on March 5, 2020.[19] Although purchased for his job at Delgado in Louisiana, where he was required to carry a firearm when on duty, Riley says he traveled to Georgia so he could "legally" purchase the gun.[20]

Riley testified that he could not remember the last time he had filed a Louisiana state income tax return, explaining that he had been living in Louisiana "since March of '20[,]" and that he filed state income tax returns in Georgia and Illinois for 2017 and in Georgia for 2018.[21] Riley submits three retirement distribution Form 1099-Rs, dated 2018, 2019, and 2020, which were mailed to his Georgia address.[22] Riley also submits his voter registration card, which was issued in Georgia in March 2019,[23] and his counsel represents that "Mr. Riley exercised his right to vote in the State of Georgia after he filed his Original Complaint."[24]

---

[16] R. Doc. 78-1.
[17] R. Doc. 78-3.
[18] R. Doc. 78-4.
[19] R. Doc. 78-7.
[20] R. Doc. 78 at 6.
[21] R. Doc. 78-2 at 6.
[22] R. Doc. 78-5.
[23] R. Doc. 78-6.
[24] R. Doc. 78 at 5.

The above-referenced facts – particularly Riley's own testimony that he was living in Georgia until he moved to Louisiana "in March 2020" as corroborated by licenses, voter registration, and other evidence – clearly indicate a Georgia domicile before the complaint was filed in late November 2019.

On the other hand, Defendants vigorously contest whether Riley was truly domiciled in Georgia at the relevant time. Defendants submit that Riley switched his Georgia domicile to Louisiana one or two years before filing the complaint. To support this contention, they focus on Riley's 2017 purchase of a house in Slidell, Louisiana, and underscore in particular the homestead exemption application he completed for that property in July 2018, which lists an occupancy date of May 10, 2018, and in which he declared "under the penalties for filing false statements" that "I own, occupy, and claim homestead exemption on the [Slidell] property ... and hereby certify that I am not claiming any other property as my homestead for purposes of homestead exemption."[25] Because Riley claimed the Slidell property as his homestead more than one year before he filed the instant lawsuit, the Defendants maintain that this conclusively shows he was domiciled in Louisiana before he filed his complaint.

Defendants offer other facts, which they submit support a finding of Louisiana domicile at the relevant time. Riley's checking account summaries from Hancock Whitney Bank from May 9, 2018, through January 9, 2019, list his address as in Slidell, Louisiana;[26] his Slidell address was listed on his Thrift Savings Plan statements for 2018;[27] and Riley applied for jobs in Louisiana, including Xavier University, Guste Homes Residential Management Corporation, Southern

---

[25] R. Doc. 76-5.
[26] R. Doc. 76-6.
[27] R. Doc. 76-7.

9

University, Dillard University, and Delgado Community College.[28] Defendants contend that all of these facts indicate Riley's intent to remain in Louisiana.

Considering the entirety of the factual record, the Court finds that a preponderance of this evidence supports Riley's contention and sworn statements that he continued to reside in Georgia until he moved to Louisiana in March of 2020.

Numerous facts indicate Riley's physical presence in Georgia coupled with an intent to remain there indefinitely through 2019: Riley testified unequivocally that he moved to Louisiana from Georgia in March 2020, not before then; he maintained a Georgia driver's license (issued in June 2019) and his car was registered in Georgia in 2019; he paid his state income taxes in Georgia, not Louisiana; he continued to pay his Georgia utility bills throughout 2019; although he applied for several jobs in Louisiana, he also applied for a job in Georgia during the same time period; he was registered to vote and voted in Georgia, not Louisiana, in 2019.

Defendants suggest that the evidence pointing to a Georgia domicile is overshadowed by one factor: the homestead exemption. In fact, Defendants double-down on this single factor, arguing (without citation to binding authority) that this *should* be determinative of domicile, despite Fifth Circuit authorities instructing district courts that determining one's domicile is a matter of federal common law, which fashions a test of non-dispositive factors. To be sure, Defendants proclaim that because Riley could be charged with a misdemeanor in Louisiana if he was lying on the homestead exemption forms, his credibility, at the very least, has been undermined by falsely claiming to "occupy" the Slidell property in 2018 and 2019 while registering to vote in Georgia (when, according to Louisiana law, he should have registered to vote

---

[28] R. Docs. 76-8; 76-9; 76-10; 76-11; 76-12. While Defendants note that Riley's October 2019 application for the job with Delgado lists the Slidell address, they fail to acknowledge that another of their exhibits – which purports to be a job application dated November 12, 2019 – lists Riley's Sandy Springs, Georgia address. *Compare* R. Doc. 76-12, *with* R. Doc. 76-11.

where he claimed his homestead exemption). This Court does not make credibility determinations on a paper record. That Riley claimed a homestead exemption in Louisiana is simply one factor which must be considered along with all other factors bearing on the domicile calculus. That Riley claimed to occupy the Slidell house as of May 10, 2018, coupled with his bank statements sent to Slidell and the higher ratio of Louisiana-to-Georgia job applications during the relevant time are indeed somewhat indicative of either his presence or intent to reside in Louisiana. Ultimately, however, these indicators are outweighed by the factors evincing a Georgia domicile on the record of Riley's entire course of conduct examined contextually and as a whole.[29] Overall, considering all relevant facts in the record, Riley has carried his burden to show that it is more likely than not that he continued to reside in Georgia with an intent to remain there indefinitely at the time he filed this lawsuit. Diversity of citizenship thus existed on the date the complaint was filed, and it was not destroyed when Riley moved to Louisiana with an intent to remain here in March 2020.

## III.   CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Defendants' Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction (R. Doc. 76) is DENIED.

New Orleans, Louisiana, this 16th day of February 2022

BARRY W. ASHE<br>
UNITED STATES DISTRICT JUDGE

---

[29] In an alternative pitch for dismissal of the case for lack of subject-matter jurisdiction, Defendants argue that Louisiana state courts should resolve the detrimental reliance issue, which is said to be an unsettled issue of state law. R. Doc. 76-1 at 2. Insofar as Defendants suggest that the Court has discretion to decline to exercise otherwise established diversity jurisdiction over a case because an unsettled issue of state law is presented, the argument is frivolous. When a party moves to dismiss under Rule 12(b)(1), this Court's task is to determine (by a preponderance of the evidence) whether it has subject-matter jurisdiction. The Court will confine itself to this task and leave to another day the appropriate way to handle the state law issue.